UNITED STATES DISTRICT COURT
OUTHERN DISTRICT OF NEW YORK

---

PREM NATH,

                              Plaintiff,

      v.

JP MORGAN CHASE BANK, N.A.;
SELECT PORTFOLIO SERVICING, INC.;
U.S. BANK N.A., *as Indenture Trustee for*
*C.S.F.B. Trust 2002-NP14*; and THE
INTERNAL REVENUE SERVICE,

                              Defendants.

---

No. 15-CV-3937 (KMK)

OPINION & ORDER

Appearances:

Prem Nath
Blauvelt, NY
*Pro Se Plaintiff*

Casey B. Howard, Esq.
Samantha A. Ingram, Esq.
Locke Lord LLP
New York, NY
*Counsel for Defendants JP Morgan Chase Bank, N.A.,*
*Select Portfolio Servicing, Inc., and U.S. Bank, N.A.*

Anthony Jan-Huan Sun, Esq.
U.S. Attorney's Office S.D.N.Y.
New York, NY
*Counsel for Defendant Internal Revenue Service*

KENNETH M. KARAS, District Judge:

    Plaintiff Prem Nath ("Nath" or "Plaintiff") brings this Action against JP Morgan Chase

Bank, N.A. ("JPMorgan"), Select Portfolio Servicing, Inc. ("SPS"), U.S. Bank, N.A., as

indenture trustee for C.S.F.B. Trust 2002-NP14 ("U.S. Bank," and collectively with JPMorgan

and SPS, the "Private Defendants"), and the Internal Revenue Service (the "IRS"), seeking to

quiet title to certain real property and to cancel or invalidate various assignments and agreements

related to a mortgage encumbering the property.  (*See* Compl. (Dkt. No. 1).)  Before the Court

are two Motions To Dismiss, one filed by the Private Defendants (*see* Dkt. No. 20), and one filed

by the IRS (*see* Dkt. No. 43).  For the following reasons, both Motions are granted.

## I.  Factual and Procedural Background

The following facts are drawn from the Complaint, as well as the various transaction

documents and state court documents attached to Private Defendants' moving papers.[1]

---

[1] "In ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit."  *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (brackets and internal quotation marks omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Hendrix v. City of N.Y.*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Following these principles, the Court considers the underlying Note, Mortgage, and assignment of the Mortgage, which are clearly referenced in, and integral to, the Complaint.  *See Best v. Bank of Am., N.A.*, No. 14-CV-6546, 2015 WL 5124463, at *1 (E.D.N.Y. Sept. 1, 2015) ("Along with its papers, [the defendant] submitted an affidavit attaching the mortgage, note, assignment of mortgage, and other loan documents issued by [the defendant] to [the plaintiff] . . . , [which the court can] consider . . . because the documents are specifically referenced in, and are integral to, the complaint."); *Solomon v. Ocwen Loan Servicing, LLC*, No. 12-CV-2856, 2013 WL 1715878, at *4 (E.D.N.Y. Apr. 12, 2013) ("The [n]ote and [m]ortgage are integral to the amended complaint and therefore may be considered by the [c]ourt.").  The Court also considers various state court documents filed in the underlying state foreclosure proceeding.  *See Yencho v. Chase Home Fin. LLC*, No. 14-CV-230, 2015 WL 127721, at *4 (S.D.N.Y. Jan. 8, 2015) (considering filings in state court foreclosure proceeding); *Solomon*, 2013 WL 1715878, at *4 ("The [c]ourt may . . . take judicial notice of the state-court foreclosure proceedings."); *see also Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice." (italics omitted)).

Moreover, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[,] a district court may consider evidence outside the pleadings."  *Morrison v. Nat'l*

On September 4, 1998, Nath executed a note (the "Note") and mortgage (the "Mortgage") with Long Beach Mortgage Company ("LBMC") to secure a loan (the "Loan") for purchase of the real property located at 12 John Calvin Street, Blauvelt, New York (the "Subject Property"). (*See* Atty. Decl. of Casey B. Howard in Supp. of Defs.' Mot. To Dismiss ("Howard Decl.") Ex. 12 at ¶¶ 4–5 (Dkt. No. 22); *see also* Compl. ¶ 14.)

On or around June 19, 2001, a foreclosure action was brought in New York Supreme Court, Rockland County, captioned *The Chase Manhattan Bank v. Prem Nath, et al.*, Index No. 3532/2001 (the "Foreclosure Action" brought in the "State Court"). (*See* Compl. ¶ 15; *see also* Dkt. No. 1-2 at 7 ("Foreclosure Complaint").)

On October 16, 2005, Plaintiff filed a bankruptcy petition under Chapter 7 in the United States Bankruptcy Court for the Southern District of New York (the "First Bankruptcy"). (*See* Compl. ¶ 17; *see also* Dkt. No. 1 (05-BK-25603 Dkt.).) Plaintiff received a discharge on March 17, 2006, (*see* Dkt. No. 12 (05-BK-25603 Dkt.)), and shortly thereafter the Bankruptcy Court entered an order lifting the automatic stay to allow foreclosure to proceed on the Subject Property, (*see* Dkt. No. 20 (05-BK-25603 Dkt.)).[2]

On March 18, 2010, Nath executed a Settlement Agreement and Release (the "Settlement Agreement") with LaSalle Bank ("LaSalle") as Trustee for the CSFB Trust 2002-NP14. (*See*

---

*Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *see also Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen, as here, subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise.").

[2] Nath alleges that "SPS committed fraud upon [the] bankruptcy court during [the First Bankruptcy when] John Cody[,] officer of SPS[,] stated to th[e] bankruptcy court that [Nath's] mortgage was owned by [LBMC] in 2006." (Compl. ¶ 17.)

3

Howard Decl. Ex. 2 ("Settlement Agreement"); *see also* Compl. ¶ 18.)[3]  The Settlement

Agreement states that Chase Manhattan Bank ("Chase") "assigned all right, title and interest in

the subject Note and Mortgage" to LaSalle, as trustee.  (Settlement Agreement at unnumbered 1.)

The Settlement Agreement also contained a loan modification agreement (the "Loan

Modification Agreement"), and stated that, in the event Nath failed to make the first three timely

payments, he agreed, among other things, "to waive any and all defenses" to the Foreclosure

Action.  (Settlement Agreement ¶ 6.)[4]  Nath concedes that he did not make any payments under

the Loan Modification Agreement.  (Compl. ¶ 21.)

On December 9, 2010, the State Court issued a Decision and Order granting summary

judgment against Nath in the Foreclosure Action.  (Howard Decl. Ex. 4 ("State Court Dec. 2010

Decision").)  The State Court found that Chase "ha[d] established prima facie entitlement to a

judgment of foreclosure and sale and [Nath] ha[d] failed to raise a material issue of fact."  (*Id.* at

5.)[5]  In the same decision, the State Court rejected Plaintiff's request to rescind the Loan

---

[3] Nath alleges that LaSalle "did not give any [Truth in Lending Act] [r]escission notice to [him]."  (Compl. ¶ 18.)  He further alleges that he "sought to have [the Loan Modification Agreement] rescinded and invalidated" pursuant to his rights under the Act.  (*Id.* ¶ 21.)

[4] The Loan Modification Agreement states that, as of March 1, 2010, the unpaid principal balance Nath owed under the Note was $492,260.67.  (Settlement Agreement at unnumbered 6.) It further states that Nath promised to pay the unpaid principal balance to the order of LaSalle. (*Id.*)  As Nath's Complaint points out, the Loan Modification Agreement lists the incorrect date for the underlying Mortgage.  (*Id.* (listing September 4, 2008, not 1998, as the date of the Mortgage); *see also* Compl. ¶ 19.)

[5] The State Court observed that Chase offered "an affidavit of Gina Tolman, a member of its servicing agent," ("Tolman Affidavit") in support of its motion for summary judgment.  (State Court Dec. 2010 Decision 4.)  The State Court further noted that "[Nath] does not refute the contents of the Tolman [A]ffidavit."  (*Id.*)  Plaintiff's Complaint challenges the accuracy of the Tolman Affidavit.  (*See, e.g.*, Compl. ¶ 23(B) (referring to the Tolman Affidavit as a "false affidavit[]").)

4

Modification Agreement on the grounds of mutual mistake.  (*Id.* at 2–3.)[6]  The decision led to a

Judgment of Foreclosure and Sale ("State Court Foreclosure Judgment"), dated February 4,

2011, and entered on March 2, 2011, directing that the Subject Property be sold at public auction

and that the proceeds of the sale be deposited with Chase.  (Howard Decl. Ex. 1 ("State Court

Foreclosure Judgment").)

On or around February 8, 2011, after the State Court Foreclosure Judgment was signed,

but before it was entered, Nath, represented by counsel, filed an order to show cause (the "Order

to Show Cause") seeking, among other things, leave to renew Chase's motion for summary

judgment and vacatur of both (1) the State Court's December 9, 2010 Decision and (2) the

Settlement Agreement and Loan Modification Agreement.  (Howard Decl. Ex. 5 ("Order to

Show Cause").)  The following arguments were raised:  (1) the Tolman Affidavit lacked a

"certificate of conformity," (2) the Tolman Affidavit stated that Chase was the holder of the Note

and Mortgage but the Settlement Agreement and Loan Modification Agreement stated that the

Loan was assigned to LaSalle, (3) Chase was a non-existent entity when it commenced the

foreclosure proceedings in June 2001, thus it lacked the capacity to commence the proceedings,

to accept the assignment of the Note and Mortgage in July 2001, or to assign it to LaSalle in June

2010, (4) Chase's initial complaint filed in June 2001 contained the material misrepresentation

that Chase had been assigned the Loan prior to commencement of the action, when, in fact, the

purported assignment from LBMC to Chase was dated July 19, 2001, (5) the July 19, 2001

assignment ("2001 Assignment") from LMBC to Chase was invalid because it lacked a

---

[6] According to the State Court, the monthly payment of principal and interest and balloon payment amounts in the Loan Modification Agreement were erroneous, but Chase was willing to accept the mistake in drafting, which would result in its receipt of less than it bargained for under the Loan Modification Agreement.  (State Court Dec. 2010 Decision 2.)

certificate of conformity, lacked a power of attorney, and was signed by an agent of the assignee, rather than by the assignor, and (6) LaSalle is a non-existent entity, because it merged into another corporation as of October 17, 2008, and thus it lacked the capacity to accept assignment of the Loan from Chase and to enter into the Settlement Agreement and Loan Modification Agreement in March 2010.  (Order to Show Cause Aff'n in Supp. ¶ 9.)

The State Court issued a Decision and Order dated July 20, 2011 that denied Nath's Order to Show Cause.  (Howard Decl. Ex. 7 ("Vacatur Denial").)  The State Court determined that Nath "ha[d] failed to offer a valid excuse for failing to submit the additional facts [relied upon in his Order to Show Cause] with the original application."  (*Id.* at 3.)  Because "[a]ll of [Nath's] 'newly' discovered facts were available at the time of the prior motion and appear to have been discoverable with appropriate diligence," Nath's motion to renew was denied.  (*Id.*)

On August 30, 2011, Plaintiff filed a bankruptcy petition under Chapter 13 in the United States Bankruptcy Court for the Southern District of New York (the "Second Bankruptcy").  (*See* Dkt. No. 1 (11-BK-23730 Dkt.).)  By that time, U.S. Bank had taken over as Trustee for the CSFB Trust 2002-NP14, (*see* Howard Decl. Ex. 12 at ¶ 12), and filed a proof of claim with the Bankruptcy Court on October 24, 2011, in the amount of $1,211,193.90, including an unpaid principal balance of $492,260.67, for the secured debt on the Subject Property, (*see* Dkt. No. 17-2 (11-BK-23730 Dkt.)).  Plaintiff, through counsel, objected to U.S. Bank's proof of claim. (Dkt. No. 17 (11-BK-23730 Dkt.).)  On March 21, 2014, the Bankruptcy Court granted U.S. Bank's motion for summary judgment on two independent grounds.  First, because U.S. Bank was the holder of the Note with a valid endorsement in blank, it had standing to file and pursue the proof of claim.  (*See* Dkt. No. 98 at 92, 98 (11-BK-23730 Dkt.).)  Second, the Bankruptcy Court held that the *Rooker-Feldman* doctrine barred it from granting Nath's claim objection,

because such a ruling would "serve as a de facto reversal of the Rockland County Orders" that recognized and enforced U.S. Bank Trustee's rights under the Settlement Agreement signed by Nath.  (*Id.* at 96 (italics omitted).)  In an order dated April 14, 2014, the Bankruptcy Court granted the Chapter 13 Trustee's motion to dismiss the case for failure to comply with certain provisions of the Bankruptcy Code.  (*See* Dkt. No. 93 (11-BK-23730 Dkt.).)[7]

On June 11, 2014, Plaintiff filed an order to show cause in this Court seeking an emergency stay of the sale of the Subject Property, (*see* Dkt. Nos. 5–6 (14-CV-3871 Dkt.)), which this Court denied in a bench ruling at oral argument held on June 27, 2014, (*see* Dkt. No. 14 (14-CV-3871 Dkt.)).  This Court eventually affirmed the Bankruptcy Court's decision granting U.S. Bank's motion for summary judgment on its proof of claim in a bench ruling on September 25, 2015.  (Dkt. No. 25 (14-CV-3871 Dkt.).)[8]

On May 21, 2015, Plaintiff filed a Complaint against Defendants "to [q]uiet [t]itle on the [Subject] [P]roperty, to expunge any title claimed by Defendants with respect to said property, to remove the cloud on the title held by Plaintiff, and to nullify a loan modification agreement secured by the property."  (Compl. 1–2.)  Private Defendants filed a Motion To Dismiss on September 16, 2015, (*see* Dkt. Nos. 20–22), which Plaintiff opposes, (*see* Dkt. No. 23; *see also*

---

[7] Specifically, the Bankruptcy Court found that Nath failed to comply with 11 U.S.C. § 1307(c)(1), having created unreasonable delay that is prejudicial to creditors, and 11 U.S.C. § 109(e), as Nath had too much debt to be an eligible debtor under chapter 13.  (*See* Dkt. No. 93 (11-BK-23730 Dkt.).)

[8] Plaintiff has since filed two additional bankruptcy petitions, one under Chapter 7, (*see* Dkt. No. 1 (14-BK-23714 Dkt.)), and one under Chapter 13, (*see* Dkt. No. 1 (15-BK-23531 Dkt.)).  Appeals from decisions of the bankruptcy court in both of those cases are pending before this Court and will be the subjects of separate Opinions.

Dkt. No. 53).  Private Defendants replied on October 2, 2015.  (*See* Dkt. Nos. 25–26.)[9]  The IRS

filed a Motion To Dismiss on December 18, 2015, (*see* Dkt. Nos. 43–46), which Plaintiff

opposes, (*see* Dkt. No. 52).  The IRS filed its reply brief on February 26, 2016.  (*See* Dkt. No.

54.)[10]

## II.  Discussion

### A.  Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject

matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'"

*Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at \*2 (D. Conn.

June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also*

*Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at \*4 (N.D.N.Y. June 5, 2014) (same),

*aff'd*, 591 F. App'x 28 (2d Cir. 2015).  "In deciding both types of motions, the Court must accept

all factual allegations in the complaint as true, and draw inferences from those allegations in the

light most favorable to the plaintiff."  *Gonzalez*, 2014 WL 2475893, at \*2 (internal quotation

marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at \*1

(D. Vt. June 4, 2012) (same).  However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes

the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction

exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule

12(b)(6)."  *Gonzalez*, 2014 WL 2475893, at \*2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340,

---

[9] Nath also filed a motion seeking a ruling that the Court's order extending Private
Defendants' time to answer was "obtained by fraud" and thus "null [and] void," (*see* Dkt. No.
24), which Private Defendants opposed, (*see* Dkt. Nos. 27–28).  The Court denied the motion by
memo endorsement on January 21, 2016.  (*See* Dkt. No. 51.)

[10] The Court notes that Plaintiff has filed a number of other documents in this Action,
some of which the Court addresses below.  (*See* Dkt. Nos. 39, 40, 53, 61, 66, 67.)  Private
Defendants responded to some of the filings.  (*See* Dkt. No. 56.)

352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules.  *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009); *see also Fagan v. U.S. Dist. Court for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009) (same).

1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010).  While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks

omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

### 2.  Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff."  *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law."  *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

1.  Counts One through Six

Plaintiff asserts six causes of action against the Private Defendants, all related to his interest (or lack thereof) in the Subject Property.  As described by Plaintiff, the six causes of action are:  (1) "Qu[iet] Title under NY RPAPL;" (2) "Qu[iet] Title Under Common Law;" (3) "Cancellation of 2001 Assignment as of Record under NY RPL 329;" (4) "Cancellation of the Loan Modification as of Record under RPL 329;" (5) "Declaratory Judgment," declaring that various assignments and the Loan Modification Agreement are null and void; and (6) "Rescission of the Loan Modification Agreement under [the Truth in Lending Act ("TILA")]." (*See* Compl. ¶¶ 44–79.)  Underlying these causes of action are many allegations that are in large part identical to the fraud allegations scattered throughout Plaintiff's filings in the several other actions to which he has been a party in federal court.

Private Defendants seek dismissal on the grounds that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, res judicata, and collateral estoppel.  (*See generally* Mem. of Law in Supp. of Defs.' Mot. To Dismiss (Dkt. No. 21).)  The Court considers the arguments in turn.

a.  Rooker-Feldman

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of N.Y.*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted).  In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Id.*

12

at 284.  After *Exxon Mobil*, the Second Circuit reexamined *Rooker-Feldman* and laid out four conditions that, if met, require the Court to dismiss a plaintiff's claims for lack of subject matter jurisdiction:  (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced."  *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same). "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third as 'substantive.'"  *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

There is no question that the procedural requirements are met here.  The State Court Foreclosure Judgment and the July 20, 2011 Decision and Order denying Nath's Order to Show Cause were issued against Nath—making him a state-court loser—and in 2011, several years before the instant Complaint was filed.

Therefore, if Plaintiff's Complaint merely "complain[s] of injuries" caused by the state-court foreclosure judgment and seeks this Court's "review and rejection of" that judgment, then Plaintiffs' claims satisfy the substantive requirements of *Rooker-Feldman* and this Court lacks subject matter jurisdiction over them.  *Hoblock*, 422 F.3d at 85 (internal quotation marks omitted); *see also Scott v. Capital One, Nat'l Assocs.*, No. 12-CV-183, 2013 WL 1655992, at *3 (S.D.N.Y. Apr. 17, 2013) (same).  The Second Circuit has explained that the requirement that a plaintiff's injuries be caused by the state judgment is the "core requirement" of the *Rooker-Feldman* doctrine.  *Hoblock*, 422 F.3d at 87.  Accordingly, *Rooker-Feldman* would not prevent

Plaintiff from "raising federal claims based on the same facts as a prior state case . . . so long as . . . [P]laintiff complains of an injury *independent of* an adverse state court decision." *Scott*, 2013 WL 1655992, at *3; *see also McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) ("What *Exxon Mobil* and *Hoblock* do make clear is that the applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . . , but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court."). Such an "independent claim" is not barred by *Rooker-Feldman*, even if the claim "denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Exxon*, 544 U.S. at 293 (internal quotation marks omitted); *see also Hoblock*, 422 F.3d at 86 ("'[I]ndependent claims' . . . are outside *Rooker-Feldman*'s compass even if they involve the identical subject matter and parties as previous state-court suits.").[11]

This is not the first time that a mortgagor has filed a suit in federal court after a state court issued an adverse foreclosure judgment. Faced with similar suits, "[c]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Webster v. Wells Fargo Bank, N.A.*, No. 08-CV-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (internal quotation marks omitted), *aff'd sub nom. Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012); *see also, e.g., Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (same); *Campbell v. Bank of N.Y. Trust Co., N.A.*, No. 11-CV-1588, 2012 WL 2952852, at *7 (S.D.N.Y. May 8, 2012) (same), *adopted by* 2012 WL 2953967 (S.D.N.Y. July 18, 2012); *Murphy v. Riso*, No. 11-CV-873, 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) (same). As the Second Circuit has put

---

[11] "The subsequent federal suit [also] could, of course, be barred by ordinary preclusion principles." *Hoblock*, 422 F.3d at 88 n.6.

it, *Rooker-Feldman* precludes a district court from entertaining a suit that "would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Vossbrinck*, 773 F.3d at 427.  This is true even if, as here, a plaintiff contends that "the foreclosure judgment was obtained fraudulently." *Id.*; *see also Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 517 (D. Conn. 2015) ("[E]ven if the state court judgment as wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding." (internal quotation marks omitted)), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat'l Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016). However, "to the extent [Nath's] pro se complaint can be liberally construed as asserting fraud claims . . . seek[ing] damages . . . for injuries [Nath] suffered from [Private Defendants'] alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment," such claims "are not barred by *Rooker-Feldman*." *Vossbrinck*, 773 F.3d at 427–28 (italics omitted); *see also Gonzalez*, 632 F. App'x at 34 ("To the extent [the] plaintiffs' complaint can be liberally construed to allege injury stemming from the same transaction but not directly caused by the foreclosure judgment, their claims are not barred by *Rooker-Feldman*." (emphasis omitted)).

The Court finds that Counts One through Six "ask [a] federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the [State] [C]ourt, lacked standing to foreclose." *Vossbrinck*, 773 F.3d at 427.  The injuries for which he seeks a remedy flow directly from the state court judgment.

First, Plaintiff's quiet title causes of action (Counts One and Two) undeniably complain of, and seek to have remedied, the State Foreclosure Judgment.  Indeed, "[t]his is evident from the relief [Plaintiff] requests—title to . . . his property." *Id.*; *see Riley v. Comm'r of Fin.*, 618 F.

App'x 16, 17 (2d Cir. 2015) ("[A]n action seeking a declaration of property ownership after loss of title pursuant to a state-court foreclosure judgment [is] barred by *Rooker-Feldman*."); *Barbato*, 2016 WL 158588, at *3 (finding *Rooker-Feldman* barred claims where "the relief that [the] [p]laintiffs seek—quiet title and return of their property—would require th[e] [c]ourt to 'review the state proceedings and determine that the foreclosure judgment was issued in error.'" (quoting *Vossbrinck*, 773 F.3d at 427)); *Quiroz v. U.S Bank Nat'l Ass'n*, No. 10-CV-2485, 2011 WL 2471733, at *6 (E.D.N.Y. May 16, 2011) ("Requesting restoration of title to [the] plaintiffs . . . essentially asks this court to vacate [the state judgment] in clear violation of *Rooker-Feldman*."), *adopted by* 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011).  (*See also* Compl. ¶¶ 47, 52 ("Plaintiff . . . seeks a determination that . . . Defendants in this lawsuit have no right or claim to Title or Lien on or against the Property.").)  Underlying Nath's request for relief is his allegation that because "Chase Bank did not own the Note and Mortgage on filing date June 19, 2001, the [State Court's] decision granting [the] [State Court Foreclosure Judgment] and recognizing the [L]oan [M]odification [A]greement is null[] [and] void ab initio."  (Compl. ¶ 30; *see also, e.g.*, Mem. in Opp'n to Mot. for Dismissal ("Pl.'s Opp'n") 2 (Dkt. No. 23) ("Therefore on filing date of June 19, 2001, . . . Chase . . . had no standing under NYS laws. . . . Therefore [the State] [C]ourt had no jurisdiction over this foreclosure case [and] any judgment rendered by [the State] [C]ourt i[s] null & [v]oid ab initio.").)  Nath's quiet title claims are thus barred by *Rooker-Feldman*, "as [they] directly challenge[] the validity of the [State Court Foreclosure Judgment] by arguing [Private] Defendants lacked standing in that suit and, therefore, the state court judgment should be voided."  *Gurdon v. Doral Bank*, No. 15-CV-5674, 2016 WL 721019, at *6 (S.D.N.Y. Feb. 23, 2016), *adopted sub nom. Andrew Gurdon (Executor-419 Estates LLC) v. Doral Bank*, 2016 WL 3523737 (S.D.N.Y. June 22, 2016); *see also Omotosho v. Freeman Invest.*

16

& *Loan*, 136 F. Supp. 3d 235, 247 (D. Conn. 2016) (finding that the plaintiff's allegation that "the state court 'judgment is void, and should be vacated or set aside,' . . . is precisely the type of case the *Rooker-Feldman* doctrine bars").

The remainder of Nath's claims seek either rescission of the Loan Modification Agreement, or the cancellation—or declaration of invalidity—of various purported assignments in the chain of title for the Subject Property.  (*See* Compl. ¶¶ 53–79.)  Nath's attempt to invalidate these various agreements and assignments underlying the State Court's determination that U.S. Bank had standing to foreclose on the Subject Property asks the "federal court to review the state proceedings and determine that the foreclosure judgment was issued in error," which is barred by *Rooker-Feldman*.  *Vossbrinck*, 773 F.3d at 427; *see also Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 504 (S.D.N.Y. 2016) ("[The plaintiff's] claims seek to review and reject the judgment of foreclosure on the grounds that the assignments were invalid and that U.S. Bank had no right to the property at issue in the foreclosure proceeding."); *Barbato*, 2016 WL 158588, at *3 (dismissing as barred by *Rooker-Feldman* a claim "asking th[e] [c]ourt to find that [the] [d]efendant does not own the [n]ote or [m]ortgage," where each "must have been found to be valid in order for the state court to issue a judgment of foreclosure on the property in favor of [t]he defendant").  Plaintiff does not articulate how he was injured by any of the allegedly void or invalid assignments or agreements apart from any role that they may have played in the State Court's decision to issue the State Court Foreclosure Judgment.[12]  Moreover, only if the State Court Foreclosure Judgment is effectively overturned could Plaintiff possibly

---

[12] For example, as alleged by Plaintiff, the 2001 Assignment was "improperly used as the basis for the [State Court Foreclosure Judgment] and sale and the Loan Modification Agreement."  (Compl. ¶ 29.)  Moreover, in its December 9, 2010 Decision, the State Court expressly relied on paragraphs 4–6 of the Tolman Affidavit, which recount the 2001 Assignment that Plaintiff challenges here.  (*See* State Court Dec. 2010 Decision 4 & n.5; Howard Decl. Ex. 3.)

point to any injury resulting from the existence of various assignments and agreements that "cloud" his title.

Plaintiff's own articulation of the purpose of this Action confirms that *Rooker-Feldman* bars this Court from entertaining his claims.  According to Plaintiff, the Action was brought "to [q]uiet [t]itle on the [Subject] [P]roperty, to expunge any title claimed by Defendants with respect to said property, to remove the cloud on the title held by Plaintiff, and to nullify [the] [L]oan [M]odification [A]greement secured by the property."  (Compl. 1–2.)  But, as discussed above, "[t]o the extent [Nath] is seeking to have this Court grant [him] title to the [S]ubject [Property], expunge [D]efendants' purported interest therein, and/or to vacate the judgment of foreclosure . . . on the basis that it was obtained fraudulently, [his] claims are barred by the *Rooker-Feldman* doctrine."  *Gordon v. First Franklin Fin. Corp.*, No. 15-CV-775, 2016 WL 792412, at *5 (E.D.N.Y. Feb. 29, 2016) (finding that *Rooker-Feldman* barred claims "seeking . . . to quiet title to the subject premises by 'expunging' and 'erasing entirely forever' [the] defendants' purported interest therein" (alterations omitted)); *see also Riley*, 618 F. App'x at 17 (affirming district court's dismissal of action pursuant to *Rooker-Feldman* where "the complaint sought to remove six alleged clouds on [the plaintiff's] claimed title to a Brooklyn property, as well as a declaratory judgment of free-and-clear ownership" despite that the plaintiff's "ownership of the property . . . was already fully adjudicated and rejected in the prior state-court proceedings").  Accordingly, *Rooker-Feldman* bars the Court from exercising jurisdiction over Nath's first six causes of action.

### b.  Res Judicata and Collateral Estoppel

Moreover, even if *Rooker-Feldman* was inapplicable, many, if not all, of Nath's claims would be barred by either res judicata or collateral estoppel.

i.  Res Judicata – Standard

"Under New York law, the doctrine of claim preclusion [or res judicata] bars litigation of

claims or defenses that were or could have been raised in a prior proceeding where that prior

proceeding resulted in a final judgment on the merits and arose out of the same factual grouping

as the later claim, even where the later claim is based on different legal theories or seeks

dissimilar or additional relief." *L.A.M. Recovery, Inc. v. Dep't of Consumer Affairs*, 345 F.

Supp. 2d 405, 409–10 (S.D.N.Y. 2004); *see also Hinds v. Option One Mortg. Corp.*, No. 11-CV-

6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (noting that "New York has adopted a

transactional approach to res judicata, barring a later claim arising out of the same factual

grouping as an earlier litigated claim even if the later claim is based on different legal theories or

seeks dissimilar or additional relief" (italics and internal quotation marks omitted)), *adopted by*

2013 WL 132719 (E.D.N.Y. Jan. 10, 2013).[13]  "This transactional doctrine also applies to

defenses that could have been litigated in a foreclosure action." *Hinds*, 2012 WL 6827477, at *5

(internal quotation marks omitted); *see also Beckford v. Citibank N.A.*, No. 00-CV-205, 2000

WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (same).  Accordingly, "[a] [f]oreclosure [j]udgment

is final as to all questions at issue between . . . parties, and concludes all matters of defense that

were or might have been litigated in the [f]oreclosure [a]ction." *Hourani v. Wells Fargo Bank,*

*N.A.*, 158 F. Supp. 3d 142, 147 (E.D.N.Y. 2016); *see also Drew v. Chase Manhattan Bank, N.A.*,

No. 95-CV-3133, 1998 WL 430549, at *6–7 (S.D.N.Y. July 30, 1998) ("Under New York law[,]

'[a] state court judgment of foreclosure and sale entered against a defendant is final as to all

questions at issue between the parties, and all matters of defense which were or might have been

---

[13] The Court applies New York's preclusion rules because "a prior state court decision [is given] the same preclusive effect that the courts of that state would give it."  *Colon v. Coughlin*, 58 F.3d 865, 869 n.2 (2d Cir. 1995).

litigated in the foreclosure action are concluded.'" (alteration omitted) (quoting *Gray v. Bankers Tr. Co.*, 442 N.Y.S.2d 610, 612 (App. Div. 1981))).

### ii.  Collateral Estoppel – Standard

Collateral estoppel, also known as issue preclusion, provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit." *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 446 F. App'x 360 (2d Cir. 2011); *see also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." (internal quotation marks omitted)). Accordingly, collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen*, 481 F.3d at 105 (internal quotation marks omitted); *see also Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 425 (S.D.N.Y. 2012) (same).  "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

### iii.  Analysis

Counts One and Two, each founded upon Private Defendants' alleged lack of interest in the Subject Property and concomitant lack of standing to foreclose, are barred by both res

judicata and collateral estoppel.[14]  The issue of Private Defendants' standing to foreclose on the

loan was necessarily decided by the State Court when it issued the Foreclosure Judgment.  (*See*

State Court Dec. 2010 Decision 4–5 (finding "that [Chase] has established prima facie

entitlement to a judgment of foreclosure and sale").)  Moreover, not only could lack of standing

have been raised as a defense to the foreclosure judgment, it expressly *was* raised, based on

many of the same arguments that Plaintiff puts forward here.  For example, in his Order to Show

Cause before the State Court, Nath argued that the 2001 Assignment was "subsequent to

commencement of the [Foreclosure Action]."  (Order to Show Cause ¶ 43.)  He also argued that,

because LaSalle no longer existed, it did not have the capacity to enter into the Loan

Modification Agreement with Plaintiff.  (*Id.* ¶¶ 59–65.)  Nath repeatedly makes the same

allegations here.  (*See, e.g.*, Compl. ¶ 8 ("At the time of the loan modification . . . La[S]alle

---

[14] The requirement that the current Action be between the same parties as the original action or those in privity with those parties is met here.  "New York law provides that privity extends to parties who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action."  *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (internal quotation marks omitted).

The Plaintiff in the Foreclosure Action was Chase, who was, as alleged by Plaintiff, the "predecessor" of JPMorgan.  (Compl. ¶ 15.)  Next, SPS, "is the servicer of the mortgage loan on [the Subject] [P]roperty," (*id.* ¶ 3), and "district courts generally have found there to be privity between a mortgage servicer and the owner of [the] mortgage," *Best v. Bank of Am.*, No. 14-CV-6546, 2015 WL 5124463, at *3 (E.D.N.Y. Sept. 1, 2015); *see also Fequiere v. Tribeca Lending*, No. 14-CV-812, 2016 WL 1057000, at *7 (E.D.N.Y. Mar. 11, 2016) (finding that a party was in privity with a litigant where, "by [the] plaintiff's own contention, [the party] serviced [the] plaintiff's mortgage until" another party acquired the mortgage"); *Yeiser*, 535 F. Supp. 2d at 423 ("GMAC's interest in the mortgage loan was represented by MERS because GMAC serviced the loan at the time of the foreclosure action . . . .").  Finally, U.S. Bank, as indenture trustee, is a successor-in-interest to the Mortgage and Note.  It bears noting that, even if privity did not exist among the Private Defendants and Chase, "[u]nlike claim preclusion, the party invoking collateral estoppel under New York law need not have been in privity with a litigant in the prior action."  *Best*, 2015 WL 5124463, at *3; *see also Koch v. Consolidated Edison Co. of N.Y., Inc.*, 468 N.E.2d 1, 6 (N.Y. 1984) ("[E]fficient utilization of the judicial system is served by preclusion of relitigation of issues as to which a litigant has had a full and fair opportunity for resolution, irrespective of the identity of his particular opponent.").

. . . just did not exist." (emphasis omitted)); *id.* ¶ 20 ("[A]ccording to . . . records, La[S]alle

. . . had ceased to exist and act as a viable national banking association in 2008[,] but was

still . . . entering into agreements with me in 2010 . . . ."); *id* ¶ 28 ("Foreclosure complaint was

filed on June 19, 2001 but . . . Chase . . . did [n]ot acquire the mortgage note until July 19, 2001.

Therefore on filing date . . . Chase . . . had no standing to come to the court . . . .").) To the

extent that Plaintiff argues that collateral estoppel should not apply because the State Court

rejected the standing-related arguments on waiver grounds (*see* Vacatur Denial), even if the

Court were to accept the argument, res judicata would bar the claims, as the doctrine bars

"defenses that *could have been litigated* in a foreclosure action." *Hinds*, 2012 WL 6827477, at

*5 (emphasis added). Indeed, the State Court specifically held that it would not consider the

arguments because the evidence supporting them "w[as] available at the time of the prior motion

and appear to have been discoverable with appropriate diligence." (Vacatur Denial 3.)

The same is true for Plaintiff's efforts to invalidate the 2001 Assignment and Loan

Modification Agreement. Once more, not only *could* Plaintiff have raised defenses and

arguments challenging the 2001 Assignment and Loan Modification Agreement in the State

Court Foreclosure Proceeding, but he expressly *did*. (*See* Order to Show Cause ¶ 36 ("Since

[Chase] did not have the capacity to acquire the loan, the assignment to [Chase] was a nullity.

Therefore, [Chase] lacks standing to foreclose on the loan."); *id.* ¶ 47 ("[T]he assignment, per se,

was defective."); *id.* ¶ 60–62 (arguing that "the Settlement Agreement and Releases and the Loan

Modification Agreement between [Nath] and LaSalle" "is void" because LaSalle no longer

existed at the time the agreements were executed); State Court Dec. 2010 Decision 3 (expressly

denying "[Nath's] motion for an order rescinding the loan modification"); *id.* at 4 & n.5 (relying

on portions of the Tolman Affidavit detailing the 2001 Assignment and noting that Nath "does

22

not refute the contents of the Tolman [A]ffidavit").)  Thus res judicata and collateral estoppel,

apart from the *Rooker-Feldman* doctrine, bar Plaintiff's efforts to invalidate the 2001

Assignment and Loan Modification Agreement.[15]

### 2.  Other Claims Against Private Defendants

The Court notes that after filing his Complaint, and memorandum in opposition to Private

Defendants' Motion, Plaintiff, without permission from the Court, filed additional papers

purporting to raise a plethora of other claims.  (*See, e.g.*, Dkt. Nos. 39, 40, 53, 61, 66, 67.)  The

papers appear to challenge the sale of the Subject Property (which occurred after the filing of this

Action) and purport to raise a number of claims regarding the sale (including the notice

provided), such as violations of 18 U.S.C. § 709, N.Y. R.P.A. § 1404, "Federal Penal Law"

§§ 1001, 1005, the FDCPA, N.Y. Gen. Bus. Law §§ 349, 350, the U.C.C. § 9-611, and N.Y.

Penal Law §§ 190.20, 190.25.  (*See, e.g.*, Dkt. No. 40.)  The Court will not address these claims,

---

[15] Moreover, Plaintiff's TILA claim is barred by *this* Court's ruling in Nath's Bankruptcy Appeal.  Nath presented the same argument he presses here, namely that the Supreme Court's decision in *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790 (2015), extended his time to rescind the Mortgage, which, he claims, he did shortly after executing the Loan Modification Agreement.  (*See, e.g.*, Compl. ¶ 8; *see also* Pl.'s Opp'n at unnumbered 5; Atty. Decl. of Casey B. Howard in Connection with Defs.' Reply in Supp. of Mot. To Dismiss Ex. 21 ("Hr'g Tr.") 55 (Dkt. No. 26) ("[Nath] argues that under TILA, his time period to rescind the refinancing of the loan by a different lender was automatically extended three years, and during his loan modification dated March 2010[,] he never received the right to rescind notice, the TILA form that explained his right to rescind notice.").)  But this Court already ruled that "TILA has no application to the settlement agreement."  (Hr'g Tr. 55.)  Indeed, even if the claim was not thus barred by collateral estoppel, the Court would come to the same conclusion because "TILA disclosure requirements do not apply to forbearance or loan modification agreements that simply reduce the interest rate and payment schedule of a loan."  *De Jose v. EMC Mortg. Corp.*, No. 11-CV-139, 2011 WL 1539656, at *7 (N.D. Cal. Apr. 18, 2011); *see also Diamond v. One West Bank.*, No. 09-CV-1593, 2010 WL 1742536, at *5 (D. Ariz. Jan. 4, 2011) ("Generally . . . a loan modification does not require additional TILA disclosures, particularly where no new monies are advanced.").  The Modification "merely re-negotiated the terms of [Nath's] existing loan" and thus "TILA does not apply."  *Johnson v. Bank of Am., N.A.*, No. 11-CV-42, 2014 WL 6694013, at *1 (D. Idaho Sept. 16, 2014).  (*See also* Settlement Agreement at unnumbered 8 (stating that "nothing in the [Modification Agreement]" should be "understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument").

raised by an experienced litigator for the first time in sur-reply briefs not authorized by the Court. *See Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14-CV-675, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) ("Where a plaintiff's motion papers assert entirely new claims that do not arise out of the facts alleged in the complaint, the court need not consider them."); *Conkling v. Brookhaven Science Assocs., LLC*, No. 10-CV-4164, 2012 WL 2160439, at *6 n.6 (E.D.N.Y. June 12, 2012) (noting that "new claims not specifically asserted in the complaint may not be considered by courts in deciding a motion to dismiss" (alteration and internal quotation marks omitted)).[16]

### 3.  Count Seven

Nath also brings a claim against the IRS related to tax liens issued by the IRS against the Subject Property.  (*See* Compl. ¶¶ 42–43, 81–85.)  He alleges that the "liens have been computed at the incorrect amount of federal taxes," and that he "did not receive the proper notice and hearings regarding the imposition of the[] federal tax lien," thus violating his due process rights. (*Id.* ¶¶ 83–85.)  He seeks a declaration that (1) "the incorrect amount of federal taxes ha[s] been computed to the federal tax lien," (2) his "due process rights were violated before the imposition of the federal tax lien on the Property," and (3) "the federal tax lien on the Property is void, invalid, and cancelled of record."  (*Id.* at Prayer for Relief.)

The IRS argues both that Nath has failed to establish subject matter jurisdiction, (Mem. of Law in Supp. of IRS Mot. To Dismiss ("IRS Mem.") 6–11 (Dkt. No. 44)), and that, to the extent subject matter jurisdiction exists, Nath fails to state a claim, (*id.* at 11–15).

---

[16] Moreover, a number of the claims raised and arguments made in Plaintiff's letters appear in Plaintiff's Amended Complaint in his other pending civil action addressing these matters, (*see generally* Am. Compl. (Dkt. No. 9, 15-CV-8183 Dkt.)), and he filed a number of the same letters in their entirety in both actions.

Sovereign immunity dictates that the United States cannot be sued without its consent. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). Thus, "[w]hen an action is brought against the United States government," waiver of "sovereign immunity is necessary for subject matter jurisdiction to exist." *Williams v. United States*, 947 F.2d 37, 39 (2d Cir. 1991). The sovereign immunity doctrine extends to federal agencies. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994); *see also Clavizzao v. United States*, 706 F. Supp. 2d 342, 346 (S.D.N.Y. 2009) (same). Although Nath cites a number of federal statutes in the Complaint's jurisdictional statement, none of those statutes waives the Government's sovereign immunity in this situation. The Court will address those first, and then will consider other statutory authority that bears on the question of subject matter jurisdiction.

First, Nath invokes 28 U.S.C. § 1331 as a basis for jurisdiction, but the general federal question jurisdiction statute "is in no way a general waiver of sovereign immunity." *Doe v. Civiletti*, 635 F.2d 88, 94 (2d Cir. 1980); *see also Morales v. Related Mgmt. Co.*, No. 13-CV-8191, 2015 WL 7779297, at *5 (S.D.N.Y. Dec. 2, 2015) (same). Nath also cites to TILA, 15 U.S.C. § 1601 *et seq.*, as a basis for federal jurisdiction, but TILA "include[s] [a] provision expressly preserving sovereign immunity." *Stellick v. U.S. Dep't of Educ.*, No. 11-CV-730, 2013 WL 673856, at *3 (D. Minn. Feb. 25, 2013); *see also* 15 U.S.C. § 1612(b) ("No civil or criminal penalty provided under this subchapter for any violation thereof may be imposed upon the United States or any department or agency thereof . . . ."). Nath's invocation of IRS Real Estate Mortgage Investment Conduit ("REMIC") regulations is similarly unavailing, because no private right of action exists to enforce the regulations. *See Obal v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-2463, 2015 WL 631404, at *4 (S.D.N.Y. Feb. 13, 2015) (collecting cases), *reconsideration denied*, 2015 WL 3999455 (S.D.N.Y. June 29, 2015); *see also Springer v. U.S.*

*Bank Nat'l Ass'n*, No. 15-CV-1107, 2015 WL 9462083, at *9 (S.D.N.Y. Dec. 23, 2015) ("The weight of well-reasoned authority rejects the existence of such a private right of action."). Finally, Nath's references to "banking laws," alleged fraud that was committed in federal courts, and the existence of ongoing bankruptcy cases do not reveal a waiver of sovereign immunity.[17]

As noted by the IRS, the Declaratory Judgment Act ("DJA") also limits Nath's ability to bring his claim.  As relevant here, the DJA forbids courts from declaring obligations "with respect to Federal taxes."  28 U.S.C. § 2201(a); *see also Black v. United States*, 534 F.2d 524, 527 n.3 (2d Cir. 1976) ("28 U.S.C. § 2201, which generally provides for declaratory judgments, contains a specific exception for matters relating to federal taxes."); *Lapadula & Villani, Inc. v. United States*, 563 F. Supp. 782, 784 (S.D.N.Y. 1983) ("The Declaratory Judgment Act expressly provides that a Court may not declare the rights and other legal relations of interested parties where federal taxes are at issue." (citation omitted)).  Accordingly, with one possible exception discussed below, the DJA bars Nath's demand that the Court declare that the incorrect amount of federal taxes were levied, that his due process rights were violated before the IRS imposed the tax lien on the Subject Property, or that the federal tax lien is void.[18]

---

[17] The Court notes that, although 28 U.S.C. § 1340 "gives the federal district courts 'original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue,' [the statute is] . . . a general jurisdictional statute, [and so] it does not . . . itself constitute a waiver of sovereign immunity."  *SEC v. Credit Bancorp, Ltd.*, 297 F.3d 127, 137 (2d Cir. 2002) (citation omitted) (quoting 28 U.S.C. § 1340)).

[18] Moreover, the Tax Anti-Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person."  26 U.S.C. § 7421(a).  Since Nath is a "person," (Compl. ¶ 1), and his requested relief of voiding the tax lien on the Subject Property would be for the purposes of "restraining the assessment or collection of any tax," Nath's claims against the IRS are also barred by the Anti-Injunction Act.  *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974) (noting that the Tax Anti-Injunction Act's "language could scarcely be more explicit"); *Randell v. United States*, 64 F.3d 101, 106 (2d Cir. 1995) ("In the context of tax assessments and collections the government's sovereign immunity has been codified by the [Tax] Anti-Injunction Act . . . ."); *see*

This is so even with respect to Nath's request for a declaration that his due process rights were violated, as "courts routinely dismiss requests for judgments declaring federal tax obligations, even in the face of 'lengthy recital[s] of assumed violations of constitutional rights.'" *Clavizzao*, 706 F. Supp. 2d at 347 (alteration in original) (quoting *Jolles Found. v. Moysey*, 250 F.2d 166, 169 (2d Cir. 1957)); *see also Laing v. United States*, 496 F.2d 853, 854 (2d Cir. 1974) (per curiam) (finding no jurisdiction over the plaintiff's request to issue "a declaratory judgment that the provisions of the Internal Revenue Code under which the assessment and levy on [the plaintiff's] property were made were unconstitutional"), *rev'd on other grounds*, 423 U.S. 161 (1976); *Lewis v. Comm'r, Internal Revenue*, No. 03-CV-4296, 2004 WL 1110276, at *3 (S.D.N.Y. Apr. 29, 2004) (report and recommendation) ("[T]o the extent that [the plaintiff] seeks a declaratory judgment that his rights were violated, his complaint runs afoul of . . . the [DJA], which expressly states that declaratory relief is unavailable 'with respect to Federal taxes'"); *Mangione v. IRS*, No. 97-CV-9439, 1998 WL 401538, at *3 (S.D.N.Y. July 17, 1998) (dismissing for lack of subject matter jurisdiction an action seeking a declaratory judgment that the plaintiff is not subject to federal taxes); *Tucker v. United States*, No. 96-CV-6039, 1998 WL 708923, at *3 (E.D.N.Y. July 6, 1998) (noting that even claims of "deprivation of constitutional rights are not sufficient to" overcome the DJA's jurisdictional bar); *Schecter v. United States Treasury Dep't*, No. 85-CV-3306, 1986 WL 14555, at *3 (E.D.N.Y. Aug. 6, 1986) ("Th[e] exception for tax matters is a very broad one, and applies regardless of a recital of alleged violations of constitutional rights." (citation omitted)); *cf. Tornichio v. United States*, No. 02-CV-351, 2002 WL 508325, at *3 (N.D. Ohio Mar. 18, 2002) ("If [the plaintiff] is also seeking

---

*also Morris v. United States*, 540 F. App'x 477, 481 (6th Cir. 2013) (noting that challenge to a federal lien falls within the Anti-Injunction Act's prohibitions despite the lien having already been filed because the Act bars suits interfering with both the assessment and *collection* of taxes).

to assert a procedural due process claim, this court nonetheless lacks jurisdiction[] [because] [d]istrict courts have no jurisdiction over civil claims challenging taxes unless litigants first pay the assessed tax and then raise the[ir] claims in a refund suit."). As the IRS points out, Nath's due process allegations "concern[] the manner in which the IRS assessed taxes and placed liens on the Subject Property." (IRS Mem. 8.) As such, the claim is made "with respect to federal taxes."[19]

Although Nath makes no reference to the statute, 28 U.S.C. § 2410(a) "constitutes a limited waiver of sovereign immunity, *SEC v. Credit Bancorp., Ltd.*, 297 F.3d 127, 138 (2d Cir. 2002), and may be relevant to Nath's claims. Under the statute, "the United States may be named as a party in any civil action or suit in any district court . . . to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a)(1).[20] "This section does not authorize a taxpayer to challenge an IRS assessment of his tax liability." *Kulawy v. United States*, 917 F.2d 729, 733 (2d Cir. 1990); *see also Falik v. United States*, 343 F.2d 38, 42 (2d Cir. 1965) (same). "Rather, the taxpayer may only contest the procedural validity of a tax lien." *Elias v. Connett*, 908 F.2d 521, 527 (9th Cir. 1990); *see also Estate of Rao v. United States*, 987 F. Supp. 249, 251 (S.D.N.Y. 1997) ("[S]ection [2410] does not allow the aggrieved taxpayer to collaterally attack the substantive validity of the underlying

---

[19] Moreover, Nath cannot maintain a *Bivens* claim against the IRS for an alleged due process violation because *Bivens* has not been extended to suits against federal agencies. *See Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 484 (1994) (refusing to extend *Bivens* to federal agencies and noting that individual defendants must be named); *see also Clavizzao*, 706 F. Supp. 2d at 347 n.7 (holding that the Court could not "construe [the] [p]laintiffs' allegations [against the IRS] as *Bivens* claims, because [the] [p]laintiffs did not name specific federal agents as defendants, nor even suggest any misconduct by any particular officials" (citation omitted)).

[20] It bears noting that even if the property upon which the Government has the disputed lien is sold during the pendency of the action, "nothing in § 2410(a)(1) . . . permits the government to oust the court of jurisdiction validly invoked." *Kulawy v. United States*, 917 F.2d 729, 733–34 (2d Cir. 1990).

tax assessment that led to the lien, but it does permit challenges premised on procedural irregularities." (citation omitted)).  "A procedural claim is one which does not challenge the existence or extent of substantive tax liability," and includes claims that the IRS failed "to assess the tax properly or to send valid notices of assessment." *Johnson v. United States*, 990 F.2d 41, 43 (2d Cir. 1993) (internal quotation marks omitted); *see also United States v. Cabral*, No. 07-CV-1741, 2008 WL 4911902, at *3 (E.D. Cal. Nov. 14, 2008) ("Where a plaintiff alleges that an IRS lien is invalid because the IRS failed to send him valid notice of assessment and demand for payment, a [§] 2410(a) claim may exist.").

Clearly, the Government has not waived its sovereign immunity through § 2410(a) as to the portion of Nath's claim against the IRS that the "liens have been computed at the incorrect amount of federal taxes," (Compl. ¶ 83), and requesting a declaration to that effect, because such a claim "challenge[s] the . . . extent of substantive tax liability." *Johnson*, 990 F.2d at 43 (internal quotation marks omitted).  But Nath's Complaint can also be read to allege that the Government's lien is void because of procedural irregularities in the assessment and filing of the lien.  (*See* Compl. ¶ 84 ("Plaintiff did not receive the proper notice and hearings regarding the imposition of these federal tax lien[s]."); *see also* Pl.'s Reply Br. Opposing IRS Mot. To Dismiss Compl. 1 (Dkt. No. 52) ("No accounting was provided to me detailing the original tax amounts, how these taxes were computed and on what basis . . . any penalties [and] late charges [were] levied.").)  Such allegations can be read to allege a failure to follow certain procedural requirements, including the need to, after making an assessment of tax, "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof," 26 U.S.C. § 6303(a), or the requirement that a taxpayer be "notif[ied] in writing" of "the filing of lien under [§] 6323," 26 U.S.C. § 6320.  Because these present challenges to the procedural validity of the

lien, the Government has waived its sovereign immunity, and this Court, at first glance, can exercise jurisdiction over Plaintiff's claim.  *See, e.g.*, *Ennis v. Pointer*, No. 02-CV-5091, 2003 WL 22064037, at *4 (N.D. Cal. Aug. 29, 2003) ("Failure to send notices of assessment and demands for payment as required by 26 U.S.C. § 6303(a) is a cognizable procedural defect under [§] 2410, and thus this [c]ourt has jurisdiction to address it." (citing *Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993)); *Rand v. United States*, 818 F. Supp. 566, 568 (W.D.N.Y. 1993) ("Because [the] plaintiff's quiet title action pursuant to 28 U.S.C. § 2410 is directed to the propriety of the procedures used, the United States has waived its sovereign immunity to be sued."); *Gentry v. United States*, No. 89-CV-337, 1991 WL 191246, at *4 (E.D. Tenn. July 22, 1991) ("[S]o long as the *merits* of the underlying assessments are not contested, challenges to the regularity of a tax lien (including challenges under [§] 6203 and 6303(a)) are cognizable under [§] 2410."); *cf. James v. United States*, 970 F.2d 750, 755 (10th Cir. 1992) ("[The] [p]laintiffs' assertion that the required notice of intent to levy under § 6331(d) was not sent to [the] plaintiffs is a claim within the grant of jurisdiction under § 2410.").

However, actions brought pursuant to § 2410 are subject to the catch-all six-year statute of limiitations for civil actions commenced against the United States, found in 28 U.S.C. § 2401(a).  *See Macklin v. United States*, 300 F.3d 814, 821 (7th Cir. 2002); *see also Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995) (same).  Plaintiff attaches two federal tax liens to his Complaint, the latest of which was filed on April 7, 2008.  (*See* Dkt. 1-5 at unnumbered 23.)  But Plaintiff did not file this Action until May 21, 2015 (*see* Dkt. No. 1), more than seven years after the filing of the tax lien, and after the statute of limitations had run.[21]  To the extent

---

[21] Moreover, "[a] federal tax lien attaches to a taxpayer's property when unpaid taxes are assessed."  *Nesovic*, 71 F.3d at 778 (internal quotation marks omitted).  Accordingly, Plaintiff's

equitable tolling is applicable to the six-year statute of limitations found § 2401(a), *see Bertin v. United States*, 478 F.3d 489, 494 n.3 (2d Cir. 2007) ("We have previously held that equitable tolling may be available for actions against the federal government . . . and may toll the catch-all statute of limitations." (citations omitted)), Plaintiff has not pled any facts warranting such tolling, *see Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002) ("Generally, to merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period []he seeks to have tolled . . . [and] the burden of proving that tolling is appropriate rests on the plaintiff."). Plaintiff has not pled any facts that bear on his exercise of reasonable diligence; importantly, even if the IRS failed to provide *any* notice of the lien, Plaintiff obviously learned of the federal tax lien at some point, but he does not explain how or when and thus the Court cannot conclude that he was reasonably diligent. *See Viti v. Guardian Life Ins. Co. of Am.*, No. 10-CV-2908, 2013 WL 6500515, at *17 n.7 (S.D.N.Y. Dec. 11, 2013) ("Parties seeking equitable tolling must make a showing of reasonable diligence not only throughout the period to be tolled but also throughout the rest of the limitations period."). Because Plaintiff filed his challenge to the lien more than six years after the claim accrued, his claim is time-barred.

### III.  Conclusion

In light of the foregoing analysis, the Court grants Private Defendants' Motion in its entirety, and Plaintiff's claims against the Private Defendants are dismissed with prejudice. The IRS's Motion is granted. Plaintiff's claims against the IRS are dismissed with prejudice, except for his claim challenging the procedural validity of the tax liens issued against the Subject Property. With respect to that claim, and that claim only, Plaintiff may file an Amended

claim accrued even more than seven years ago. The distinction, however, makes no difference to the present claim at this point.

Complaint, which must be filed with this Court within 30 days.[22] Failure to do so may result in dismissal of his remaining claim against the IRS with prejudice. The Clerk of Court is respectfully requested to terminate the pending Motions. (Dkt. Nos. 20, 43.)

SO ORDERED.

DATED:     September 30, 2016
             White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[22] Further, Plaintiff *must* effect proper service as required by Federal Rule of Civil Procedure 4(i) within 60 days of the date on which he files his Amended Complaint. There will be no extensions, and failure to properly effect service within the allotted time may result in dismissal of Plaintiff's claims.